# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ISLANDE JEAN-MICHEL,

      Petitioner,

v.                                   No. 2:26-cv-00364-DHU-JFR

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security;
PAMELA BONDI, U.S. Attorney General;
TODD LYONS, Acting Director, Immigration
and Customs Enforcement; MARY DE ANDA-
YBARRA, Field Office Director, El Paso Field
Office, Enforcement and Removal Operations,
Immigration and Customs Enforcement; DORA
CASTRO, Warden, Otero County Processing Center,

      Respondents.

## **ORDER GRANTING HABEAS PETITION**[1]

This matter comes before the Court on Petitioner Islande Jean-Michel's Verified Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Petitioner is currently in immigration detention and alleges that she is unlawfully detained after previously being released on her own recognizance, in violation of her due process rights, the Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA"). The Petition asks the Court to declare Petitioner's arrest and detention unlawful and to grant a writ of habeas corpus ordering Respondents to immediately release Petitioner, or, in the alternative, to order an immediate bond hearing. *Id.* at 11, 13. Having considered the parties' briefs and the relevant and applicable law, the Court finds that the Petition should be **GRANTED**.

---

[1] Petitioner also filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction in this matter. Doc. 10. Because this Order grants the relief requested in both the Petition and the Motion, the Court **DENIES** Petitioner's Motion for TRO as moot.

## I.
## BACKGROUND

Petitioner Islande Jean-Michel is a citizen of Haiti who entered the United States on September 11, 2021, fleeing political persecution in her home country. Doc. 1 at ¶ 19. After her arrival, Petitioner was released into the United States on her own recognizance. *Id.* She subsequently sought asylum and withholding of removal in 2022. *Id.* at ¶ 21. On November 20, 2025, an Immigration Judge ("IJ") in New York denied Petitioner's claims for asylum and withholding of removal. *Id.* at ¶ 24. Petitioner filed a timely appeal to the Board of Immigration Appeals ("BIA"). *Id.* at ¶ 25. Petitioner is currently detained at the Otero County Processing Center. *Id.* at ¶ 1.

On February 10, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. In the Petition, Ms. Jean-Michel contends that her ongoing detention without a bond hearing is unlawful. The Petition asks this Court to:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause directing Respondents to file a return within three (3) days absent good cause for a short extension not exceeding twenty days, and set the matter for a prompt hearing;

(3) Prohibit Petitioner's removal from the United States and transfer outside the District of New Mexico during the pendency of this action;

(4) Grant the writ of habeas corpus and order Petitioner's immediate release from ICE custody;

(5) In the alternative, conduct an immediate, constitutionally adequate individualized custody determination at which the Government bears the burden to justify continued

detention and the Court considers release on bond or other reasonable conditions of supervision;

(6) Award Petitioner her costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

(7) Grant such other and further relief as law and justice require.

*Id.* at 13.

On February 12, 2026, this Court issued an Order to Show Cause, requiring Respondents to respond to the Petition within ten business days of service. The Government timely responded on February 25, 2026. *See* Doc. 9. In the Response, the Government does not dispute the facts alleged by Petitioner. *Id.* Relying on the BIA's decision in *Matter of Yajure Hurtado*, Respondents' position is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because she was present in the United States without being admitted or paroled. *Id.* at 1-2. However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, Case No. 2:25-cv-01076. *Id.* at 2. And the Government concedes that the facts of this case "are not materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* The Government did not address the argument that Petitioner is entitled to release because of her previous release on her own recognizance.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief,

3

arguing she is being unlawfully detained in violation of the INA, the APA, and her Fifth Amendment due process rights.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

### III.
### DISCUSSION

**A. Petitioner's re-detention without a pre-deprivation hearing violated her due process rights.**

Petitioner argues that her detention violates, among other things, the Due Process Clause of the Fifth Amendment. Doc. 1 at 8-9. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. See *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

1. Petitioner Possesses a Protected Liberty Interest.

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in her release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010).

Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled her "to do a wide range of things," including to "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody after her arrival in 2021. Doc. 1 at ¶ 19.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, --F.Supp.3d--, 2025 WL 2941217, at *3 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by ORR demonstrated a substantial likelihood of success on claim that he possesses a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

2. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.</u>

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom

from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for several years before being re-detained by ICE, during which time her interest in release grew stronger as she lived freely and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Her private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. A pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining her.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

**B. Petitioner's ongoing detention without a bond hearing is also unlawful.**

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, as the Government acknowledges in its Response, Doc. 9, the Court has already considered the

statutory and constitutional issues raised by Petitioner with regard to §§ 1225 and 1226. *See Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos et al.*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 (D.N.M. Feb. 2, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293 (D.N.M. Feb. 5, 2026). Because the facts here are not materially different than those the Court analyzed in previous cases, *see* Doc. 9 at 2, the Court's conclusion is the same. Ms. Jean-Michel, who entered the United States over four years ago, was arrested inside the United States after entering, and was released on her own recognizance, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman v. Castro et al.*.

### C. Immediate release is the appropriate remedy.

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—the Government's initial re-detention of Petitioner without due process of law. *See, e.g., E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."). In its Response, the Government fails to address this aspect of Petitioner's claim and presents no arguments about the appropriate remedy in this case. *See* Doc. 9.

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *See, e.g., Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the

appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246 (D.N.M. 2025) (at TRO stage, ordering immediate release of petitioner previously released by ORR and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, 2026 WL 91470, at *13 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by ORR not to be a flight risk or danger); *Faizyan v. Casey*, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, at *4 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

The Court need not reach the merits of Petitioner's APA or Suspension Clause claims.

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within twenty-four hours of this Order and subject her to the same terms as her original Order of Release on Recognizance. Unless and until Petitioner's removal order becomes final, Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to her community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Monday, April 6, 2026, confirming Petitioner's timely release.

Petitioner may submit an application for attorney's fees within 30 days of this Order pursuant to 28 U.S.C. § 2412. Respondents may respond to Petitioner's application for fees no later than 14 days after Petitioner's application is filed with this Court.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE